566 So.2d 328 (1990)
George CURTIS, Appellant,
v.
BORDO CITRUS PRODUCTS and Liberty Mutual Insurance Company, Appellees.
No. 88-3049.
District Court of Appeal of Florida, First District.
August 24, 1990.
*329 Jamie Hoffman McWilliams of Langston, Hess & Daniels, P.A., Maitland, for appellant.
Judith J. Flanders of Lane, Trohn, Clarke, Bertrand & Williams, P.A., Lakeland, for appellees.
NIMMONS, Judge.
In this worker's compensation case, the claimant appeals the judge's denial of permanent total disability (PTD) and wage loss benefits. We affirm in part, reverse in part, and remand.
Appellant, who is presently 71 years old, was employed by appellee Bordo as a truck driver when he seriously injured his right shoulder in the January 1985 compensable accident. As a result of this accident, from which appellant was found to have reached maximum medical improvement in July 1985 with an overall permanent partial impairment rating of 15%, appellant was left with extremely limited use of his right arm.[1] Consequently, he is no longer able to engage in truck driving or any other activity requiring any significant use of the right arm.
He left his employment with Bordo in late March 1985 and in April 1985 experienced the onset of a heart condition, from which he was found to be permanently and totally disabled. The heart condition is not related to his compensable accident. Appellant has not worked since March 1985.
Appellant asserted in his claim for benefits that in light of the circumstances of this case, including his age, educational level, and work history, the shoulder injury alone rendered him PTD. In the alternative, appellant sought wage loss benefits for April and June 1988.[2]
The judge found that appellant is unemployable due to his heart condition and that appellant had failed to establish that the shoulder condition had independently rendered him PTD. Regarding wage loss benefits, the judge excused the work search requirement due to appellees' failure to notify appellant of his work search obligations. The judge nevertheless denied wage loss benefits on the ground that appellant's heart condition was the true cause of his inability to work.
The finding that appellant was not PTD as a result of the compensable (shoulder) injury alone is supported by competent substantial evidence and is affirmed. We find, however, that the denial of all compensation is unsupported by the record and is based upon application of an erroneous standard. The judge incorrectly treated the permanent total disability resulting from the heart condition as a superseding cause which barred appellant's entitlement to compensation for disability attributable to the compensable injury. While disability resulting solely from a second, noncompensable cause is not compensable, if on the date of the noncompensable event the claimant is still suffering from the effects of the first, compensable accident, it does not follow that he is entitled to no compensation. Koulias v. Tarpon Marine Ways, 538 So.2d 130 (Fla. 1st DCA 1989). The occurrence of the second accident or condition, while disability from the compensable accident continues, does not break the causal chain for all claims, but only those attributed to the later noncompensable condition. *330 McPherson v. Broward County School Board, 527 So.2d 238 (Fla. 1st DCA 1988); Parish v. Baptist Hospital, 512 So.2d 1031 (Fla. 1st DCA 1987). An evidentiary issue is presented as to what portion of the disability is caused by the compensable accident, even where the noncompensable condition is independently a sufficient producing cause of claimant's total disability. Spaulding v. Albertson's, 543 So.2d 858 (Fla. 1st DCA 1989).[3] Benefits may be awarded for either disability or medical care which is causally related to the compensable accident and injury. Koulias. In other words, the claimant is not to be foreclosed from receipt of disability benefits on the ground that, in light of the disability resulting from the noncompensable accident, his present earning capacity is no more impaired than it would have been had the compensable accident not occurred.[4]
Application of the wage loss concept to the instant case is problematic, however, for the reason that there is no evidentiary basis upon which to measure appellant's entitlement to wage loss benefits, which are intended to compensate the claimant for actual wage loss resulting from a permanent impairment. R.E. Dailey Company v. Dorman, 509 So.2d 377 (Fla. 1st DCA 1987); Section 440.15(3)(b). The claimant typically, but not necessarily, demonstrates the extent of the loss as well as the causal connection by testing his employability through a work search. Rios v. Fred Teitelbaum Construction, 522 So.2d 1015 (Fla. 1st DCA 1988); Tampa Electric Company v. Bradshaw, 477 So.2d 624 (Fla. 1st DCA 1985); Publix Supermarkets, Inc. v. Franklin, 467 So.2d 1031 (Fla. 1st DCA 1985).
In the instant case, the claimant was disabled by an unrelated condition prior to reaching MMI from the compensable injury, and did not achieve true permanent status until the point at which he was found to be PTD. The true economic effect of his compensable permanent impairment, which has never existed as a separate entity from his disabling heart condition, has therefore never been meaningfully tested in the employment market. As noted in footnote 3, supra, the apportionment or "carving out" of effects of the compensable and noncompensable injuries applies where the noncompensable injury occurs after the claimant has reached MMI from the compensable injury.
*331 Under the pre-1979 Workers' Compensation Act, where it was determined that a claimant was permanently and totally disabled, but only a portion of the disability was due to a compensable condition, the claimant was entitled not to an award of permanent partial disability, but rather to a partial award of PTD representing the portion of the disability attributable to the compensable condition. Fisher v. Carroll Daniel Fisher Construction Company, 212 So.2d 289 (Fla. 1968). This is to be distinguished from the prohibited "reverse merger," in which a permanent compensable condition merges with a subsequently developing noncompensable condition to produce disability greater than would have been caused by either condition alone. Oak Construction Company v. Jackson, 522 So.2d 1068, 1072 (Fla. 1st DCA 1988).
We conclude that Fisher applies to this case. Permanent total disability, unlike wage loss, compensates the claimant for loss of wage earning capacity rather than actual loss of income. Walker v. City of Tampa, 520 So.2d 66 (Fla. 1st DCA 1988). While actual loss of income cannot be meaningfully measured in a case such as this, the contribution of the compensable injury to the claimant's permanent total disability is measurable.
Accordingly, we find that appellant established entitlement to compensation for a portion of his PTD equivalent to the 15% share contributed by his compensable injury to his permanent total physical disability. We reverse and remand with directions to award such compensation.
AFFIRMED in part, REVERSED in part and REMANDED.
BOOTH and ZEHMER, JJ., concur.
NOTES
[1] It is apparent that, although on this date appellant had reached MMI as to the compensable injury, he remained, in fact and in law, temporarily disabled due to other causes until the later determination of PTD.
[2] Appellant also argued that the heart condition was causally related to the industrial injury, but on appeal does not dispute the judge's finding that his heart condition is unrelated and noncompensable. Appellant limited his wage loss claim to April and June 1988 because these were the only months for which wage loss claim forms had been filed and placed into evidence.
[3] In Department of Public Health v. Wilcox, 458 So.2d 1207, 1210 (Fla. 1st DCA 1984), we stated that where a claimant suffers disabling effects from both a compensable accident and a subsequent noncompensable accident, the judge should "carve out" the unrelated impairment if it is causing disability, so as to arrive at the correct degree of compensable permanent disability. Wilcox, however, does not fully address the question presented in this case. Wilcox is distinguishable in that it dealt with the pre-1979 Workers' Compensation Act, under which the amount of compensation payable to a claimant who had suffered permanent partial disability in a compensable accident was in most cases directly determined by the percentage of disability attributable to the compensable injury. § 440.15(3), Florida Statutes (1977). The focus was upon loss of wage-earning capacity, Wilcox at 1210, and the Act imposed no requirement that the claimant demonstrate actual loss of wages. In 1979, however, the Act was substantially amended to introduce the concept of wage loss, which requires the claimant to demonstrate a loss of wages in addition to the showing of a compensable permanent impairment.

Additionally, the Wilcox holding applies to cases in which the noncompensable accident or condition occurs after the claimant has reached MMI from the compensable injury. Atkins Construction Company v. Wilson, 509 So.2d 1185, 1187-88 (Fla. 1st DCA 1987); Oak Construction Company v. Jackson, 522 So.2d 1068, 1072 (Fla. 1st DCA 1988). Accordingly, application of the Wilcox formula does not establish whether a claimant is entitled to wage loss benefits. Where a noncompensable second accident has intervened to cloud the issue of entitlement to wage loss benefits, the determinative question remains what compensation, if any, the claimant is entitled to as a result of disability resulting from the compensable accident.
[4] Koulias is particularly on point. Koulias, the claimant, injured his right shoulder in a compensable accident, and shortly thereafter suffered a noncompensable heart attack, which rendered him permanently and totally disabled. The judge dismissed Koulias's claim relating to his shoulder injury on the ground that "[h]is inability to get out and find work is because he is permanently and totally disabled from his unrelated heart condition." Id. at 131. We reversed and remanded for additional findings on Koulias's entitlement to treatment and benefits based on his shoulder injury as a separate entity.